ROGGENBIHL v. LUSBY et al.
THE MALDEN.
Civ. A. No. 53–73.

United States District Court
D. Massachusetts.
Nov. 13, 1953.

**316**

Nathan Greenberg, George J. Dodd, Boston, Mass., for plaintiff.

James F. Lusby, Seymour P. Edgerton, Bingham, Dana & Gould, Boston, Mass., for defendant Lusby.

Anthony Julian, U. S. Atty., Alfred G. Malagodi, Asst. U. S. Atty., Boston, Mass., for District Director of Immigration and Naturalization.

FORD, District Judge.

On November 4, 1953, Cato Arvid Roggenbihl brought this petition for writ of habeas corpus, alleging that as a result of a detaining order issued by an official of the Immigration and Naturalization Service he was being detained unlawfully and without due process of law aboard the American flag vessel Malden, at Boston, in violation of his rights under the Fifth Amendment to the Federal Constitution. The writ issued on the same day. The Malden being about to sail on a foreign voyage, respondent Lusby delivered petitioner to the custody of respondent Nicolls at the East Boston Immigration Station where he is now detained. On November 9, 1953, a full hearing was had upon petitioner's claim.

Roggenbihl was born in Norway, in 1898. He has been a seaman for all of his working life. His first voyage to the United States took place in 1916. He claims to have entered the United States, however, in 1920 at Newport News, Virginia. Since 1920, he has followed his occupation as a seaman, shipping only on American flag vessels, both for coastwise and foreign voyages. His home between voyages has been in the United States. For the past ten years that home has been at 274 Commercial Street, in Boston, and before that in Chelsea and other nearby communities. Since 1945, he has consistently signed on for voyages on vessels owned in Boston.

In 1940, Roggenbihl registered at Boston under the alien registration provisions of the law, 8 U.S.C.A. § 451 et seq.[1] No alien registration receipt card seems to have been issued to him at that time, but, in 1942, at the East Boston Immigration Station he applied for and received such a card.

In October 1952, he filed a petition for naturalization as a citizen of the United States. The United States Coast Guard has issued to him the identification and clearance card required in order for him to obtain employment upon American vessels. 50 U.S.C.A. § 191.

On March 25, 1953, petitioner was questioned by an investigator for the Immigration and Naturalization Service, in connection with an investigation to determine whether he should be deported. On April 10, 1953, a warrant for his arrest was issued, but the warrant was cancelled and the proceedings closed when it was learned that he had sailed on a foreign voyage.

On March 28, 1953, Roggenbihl signed on as a seaman on the S. S. Malden for a coastwise voyage and, on April 6, 1953, signed on the same vessel for a foreign voyage to Italy. The boat returned from Italy by way of Venezuela, arriving at Baltimore on May 23, 1953. There petitioner was questioned by an Immigration official, was told he could not receive

1. See Immigration and Nationality Act 1952, 8 U.S.C.A. § 1301 et seq.

a permit to land and must remain on the ship. No statement was ever made to him of the charges against him and at no time was he given a hearing. Since May 1953, petitioner has been kept aboard the vessel, or ashore in custody of the Immigration Service at the expense of the vessel while the vessel was in a shipyard for repairs in July 1953, and again since the vessel sailed from Boston after the issuance of the writ in these proceedings. The vessel has in that time made two further voyages to Italy and some coastwise voyages. Whenever it arrived in a United States port petitioner was again accorded the same treatment by Immigration officials as he had received in Baltimore in May 1953. To avoid the imposition of a fine against the vessel, 8 U.S.C.A. § 1284, the master has ordered him not to leave the vessel in American ports and has employed a guard to enforce that order.

As to the foregoing facts there appears to be no dispute. The parties are in disagreement, however, as to whether Roggenbihl was ever legally admitted to the United States for permanent residence. It is his contention, and he so testified, that in 1920, when he arrived at Newport News as a member of the crew of the vessel Terrier, he was then examined and admitted as a permanent resident and at that time paid the required head tax. The records of the Immigration and Naturalization Service at Norfolk, Virginia, indicate his arrival at Newport News on July 13, 1920, but there is no record that he was then legally admitted for permanent residence, or that the head tax was paid. The naturalization application signed by Roggenbihl, in October 1952, contains the statement that he "never had legal entry for permanent residence." In 1940, he filed an alien registration form which indicated that he entered the United States in 1920 as a "seaman" rather than a "permanent resident". In 1942, when he applied for a copy of his alien registration card, the records indicate that he then stated he had never paid a head tax. The record of his interrogation by Agent Schofield on March 25, 1953, signed by petitioner, indicates that he answered "no" to questions as to whether he had ever been admitted to the United States for permanent residence or had ever paid a head tax when entering the United States. In the light of all these facts, it must be found that Roggenbihl has never been legally admitted to the United States as a permanent resident.

The important issue in the case is whether one in the status of petitioner here is a person entitled to the protection of the Fifth Amendment. If he is, then the refusal to give him a landing permit and the consequent enforced detention of petitioner aboard his ship while it remains in an American port, all done without notice to petitioner of the charges against him or without opportunity to be heard, clearly constitutes a deprivation of liberty without due process of law. Respondent Nicolls, however, contends that since Roggenbihl has never lawfully been admitted to this country for permanent residence, his status is merely that of an alien on the threshold of initial entry, who cannot claim a constitutional right to notice and hearing and whose exclusion by administrative action is final and conclusive. Shaughnessy v. U. S. ex rel. Mezei, 345 U.S. 206, 73 S.Ct. 625; U. S. ex rel. Knauff v. Shaughnessy, 338 U. S. 537, 70 S.Ct. 309, 94 L.Ed. 317.

Petitioner relies on the case of Kwong Hai Chew v. Colding, 344 U.S. 590, 73 S.Ct. 472. In that case Chew, like petitioner here, had made a voyage to a foreign port as a seaman on a vessel of American registry, and was, on his return to an American port, denied permission to land. The Supreme Court held that the status of Chew was to be assimilated to that of a lawfully resident alien, physically present in the United States, entitled to notice of the charges against him and opportunity for a hearing. The only significant difference between this case and the Chew case is that Chew had been lawfully admitted to the United States as a permanent resi-

dent prior to the voyage, while Roggenbihl's presence here as a permanent resident has never been lawful.

■ The gist of the Supreme Court's holding in the Chew case was that a foreign voyage by a seaman on a vessel of American registry with a home port in the United States does not terminate the constitutional status which he enjoyed prior to the voyage. Applying that principle to the present case, Roggenbihl while on board his ship on its return to an American port, is to be regarded, at least for constitutional purposes, not as an entrant alien, but as an alien physically, although unlawfully, resident in the United States. The voyage is not to be regarded as an interruption of his continuous physical presence here since 1920.

■ Roggenbihl, before signing on as a seaman on The Malden, was a person within the protection of the Fifth Amendment and entitled to due process of law. An alien who has not entered the country clandestinely and who has remained in the country for some time and has become subject to its jurisdiction and a part of its population cannot be taken into custody and deported without notice or hearing even though it is alleged that his presence here is illegal. Wong Yang Sung v. McGrath, 339 U.S. 33, 49–50, 70 S.Ct. 445, 94 L.Ed. 616; The Japanese Immigrant Case, Yamataya v. Fisher, 189 U.S. 86, 100, 101, 23 S.Ct. 611, 47 L.Ed. 721. On the principles of the Chew case, petitioner's status has not been changed and his constitutional rights have not been lost by his voyages to foreign ports as a seaman on The Malden.

■■ In the Chew case, 344 U.S. at pages 600, 601, 73 S.Ct. 472, the Supreme Court pointed out, in support of its views, § 307(d)(2) of the Nationality Act of 1940, 8 U.S.C.A. § 707(d)(2), providing that continuous service by a seaman on a vessel of American registry with a home port in the United States should be considered as residence in the United States for naturalization purposes. Similar provisions are contained in § 330 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1441. Moreover, paragraph (2) of that section allows seaman to claim certain service on American vessels prior to September 27, 1950 as residence and physical presence in the United States and provides that if their petition is filed within one year of the effectual date of the Act they may be naturalized without being required to establish a lawful admission for permanent residence. The privilege conferred by § 1441(2) is specifically for the benefit of seamen in petitioner's position who cannot establish legal residence here. It cannot be held that such a seaman by the mere fact of embarking on a foreign voyage places himself in a position where his right to land in this country and claim the privilege granted him is subject to be defeated by an exclusionary procedure which lacks the basic elements of due process. It would seem clearly contradictory to the plan and purpose of the Act to hold that a seaman with petitioner's long record of actual residence here and service on American vessels both before and after 1950, has no better constitutional status than an alien approaching our shores for the first time.

No contention is made here that petitioner's exclusion has been based on security grounds or that his release would create any danger to our national safety. It appears that in fact the Immigration Service believes he should be excluded as a person who has twice been convicted of crimes involving moral turpitude. If these charges are true, there are constitutionally acceptable procedures by which they can be established and petitioner deported. The court here is concerned solely with the question of the lawfulness of petitioner's present detention. It must be found that this detention, without the notice and hearing to which he is entitled as a matter of due process under the Fifth Amendment, is unlawful and petitioner is entitled to be released.

An order will be entered sustaining the writ and discharging the petitioner from detention.